Good afternoon, Your Honors. Richard Hassenpore, Appellant in Cross Appellee, the City of San Diego, and I would like to reserve ten minutes for rebuttal. The City of San Diego... Watch your time, please. Yes, I've got it right here. Okay, thank you. The City of San Diego, like many cities in California and across the United States, enacted a set of campaign finance laws in the 1970s that is periodically updated. In this case, plaintiffs made five attacks on city contribution limits and sought a preliminary injunction in joining their enforcement. The City enacted its contribution limit laws to prevent corruption and the appearance of corruption. These are interests the Supreme Court has repeatedly recognized as legitimate and compelling, and which the Supreme Court has relied upon to uphold both the limits on campaign contributions and the federal corporate contribution ban. In reviewing challenges to contribution limits, this Court has repeatedly held, most recently in the McComish case, that contribution limits are judged under an intermediate level of scrutiny, one more complacent than strict scrutiny. And the Supreme Court's recent Citizens United case was careful not to upset these rules in evaluating the constitutionality of contribution limits. The District Court denied the preliminary injunction as to three of the five challenge sets of contribution limits and granted as to two. I'm going to begin with where the District Court got it right, focusing on the two issues in the cross appeal. First, the District Court was correct to deny the preliminary injunction on plaintiffs' challenge to the city's laws barring non-human entities, including but not only corporations and unions, from contributing directly to candidates for city office. No court of which we are aware, either before or after Citizens United, has ever held that artificial entities have a constitutional right to make contributions directly to candidates. Indeed, all courts that have considered the question have rejected that constitutional claim. Let me ask you this, just in terms of the operation of the ordinance. Are these non-human entities, non-human persons as it were, forbidden not only to make direct contributions, are they also forbidden to coordinate their political activities, or may they coordinate their political activities with the candidate? Your Honor, the answer depends upon whether we're talking about political parties or other non-human entities. As to political parties, state law preempts local law and allows coordination for the purpose of making member communications. So there could be unlimited coordination with a candidate by a political party to send mail, for example, to all registered voters or members of the party. Registered voters as well as members of the party? The registered voters are considered members of the party for purposes of state law. Registered voters who are members of the party. So if it's the Republican Party, one of the plaintiffs in here, they can coordinate with candidates, accept unlimited contributions to send mail to anyone who's registered with the Republican Party. I see, but coordination with the candidate is limited to that. They can't get out the vote. They can't do yard signs. They can't mail to non-registered Republicans. With coordinated money, with coordination, they could not. Certainly they could without the coordination with the candidate. So they can do independent mailers or independent activities. Yes, and I should stress these are non-partisan elections. When we talk about their candidates, there may be people who are candidates or are members, but it's a non-partisan election. Okay. The party doesn't appear on the ballot. And do we know much about how tightly independent is defined? Independent is kind of a fantasy in my view, but can you give me some sense of what they mean by independent? Well, I believe it's typical coordination that, you know, that becomes a question of fact when there's a dispute. And there's discussion of that in Your Honor's Long Beach case about what constitutes coordination. That's a perennial problem when you have different rules for independent expenditures and contributions. Could I interrupt for just a moment, sir? You say there were five challenges? There were five, but only four on appeal. The plaintiffs did not appeal. The district court's holding that challenged the $500 contribution limit is unconstitutionally low. So there are two issues on the appeal and two on the cross appeal. So what are your two issues? Which sections of the law are you? Well, you can't point to specific sections because they interact. Right. Well, let's make this argument a little more concrete. Sure. Okay. So the district court enjoined the contribution limit. The contribution, this is in 27.2936B. This is as to the independent expenditures. And did it correctly apply? I'm sorry? Which standard of review did it apply? Which standard of review did the district court apply? Right. We contended that district court was not clear in what standard it applied. In a further ruling after the preliminary injunction was issued, the district court said that it had applied the standard for contribution limits, this intermediate level of scrutiny. The court, just back to the earlier point I was making, the court had rejected the challenge that prevented artificial entities from making contributions directly to candidates. And that is, I believe that appears in 29.35A, that is. Yes, I believe that's 29.35A. This ruling is correct for a number of reasons, most importantly because of the ease of application. The plaintiffs even conceded below the possibility that savvy contributors could use sham entities to evade contribution limits, and that's reason enough to uphold the limits. But there's more. There's controlling Supreme Court authority. The Beaumont case specifically held under Federal law that corporations, including non-profit corporations, could be barred from contributing directly to candidates. The Supreme Court in Citizens United didn't touch the Beaumont case. Indeed, the Court expressly stated that one of the cases on which Beaumont relied, the NRWC case, was a, quote, contributions case unaffected by the holding in Citizens United. The only two cases of which we are aware to consider whether Beaumont remains good law after Citizens United, both said it did. Judge Cabranes in the Second Circuit Green Party case said it did, and a Federal district court in Minnesota just said it did. And that Minnesota court went even further and rejected the very argument made here that entities now have some constitutional rights to contribute directly to candidates. Now, assuming for the moment that I agree with you as to all non-human entities seeking to contribute to candidates, but what about except for political parties? Yes. Do you address political parties separately? Absolutely. Because that seems to me a distinct question. Yes, I agree. And the district court drew a distinction. Just to be clear, the other way the district court we believe got it right was on the 12-month contribution window. But I can come back to that question. Just turning to Your Honor's question about the political parties, on political parties, the district court erred in saying that political parties have a constitutional right to contribute directly to candidates in nonpartisan elections. First, the plaintiffs claim that parties are unable to participate in city elections, which is plainly untrue. They can engage in as much independent expenditures as they want. They can engage in as much coordinated spending as they want for purposes of member  That's pursuant to the statute. That's a pretty limited degree of coordinated activity. Well, I believe that they spent considerable sums, and I believe the complaint is alleged that there are considerable sums spent on these member communications that are really sent to every Republican registered voter in San Diego County, as much mail as you want, as much contact as you want. In terms of the constitutional right, neither the Randall case nor any other case has ever held that political parties have a special right to better or a more lenient contribution. I'm not sure I read Randall quite that way. And I understand it's somewhat difficult because we have Justice Breyer's opinion and we have all these concurrent judgments and so on, except the concurrent judgments seem to say, well, I just really don't like Buckley v. Vallejo, but applying the Buckley framework, I agree. So I think I've got a majority opinion, actually, assuming the Buckley framework still governs. I would disagree with that, Your Honor. The reason is, as the Chief Justice explains in Citizens United, cases are not, especially in this area, I would say, should not be taken as authority for propositions they don't decide. Nobody argued, and I believe it was the Cal case, the Fifth Circuit on Bunk case, just rejected the argument that Randall provides some better standard. That would be the case. Well, I'm just reading Justice Breyer's opinion. Yes. And Justice Breyer does say that he's going to analyze the political parties somewhat differently, and he is going to rely, at least in part for that analysis, on the associational  Yes. I'm just reading Justice Breyer's opinion. I believe that was in the context of making an overall assessment as to whether or not the $400 contribution limits in Vermont, which were the lowest in the nation, was unconstitutional. It wasn't a separate holding. Now, let me give a But it seemed to me, and we may be just disagreeing on this, it did seem to me a distinct line of analysis in his opinion. He has a separate section in which he's discussing political parties.  He does have that separate section. But let me give you an argument as to why this makes sense to have this rule. It's the same reason that makes sense for purposes of other nonindividual entities. That is the possibility of circumvention. In the Colorado II case, the Supreme Court recognized the problem when political parties are used as conduits to channel contributions to candidates. So here, somebody who wants to channel, say, $100,000 to a candidate could go through any number of different party committees across the country, county committees, and channel the money in that way. Have any circuits addressed the anti-circumvention rationale since Citizens United? I believe that was addressed in the Cal case, Your Honor. I'd have to go back and look at that. But there certainly have been no cases that I'm aware of that have rejected that argument. But the question is whether anyone has relied upon it since Citizens United. Right. Right. But I think there's no question that if you look at Citizens United, there is the case is very narrowly focused on the question of truly independent spend. And it is not focused on any of the law-related contribution limits or the anti-circumvention. In fact, in part of Citizens United, the Court goes out of its way to talk about how in Buckley the Court recognized the need to go further than just targeting bribery, and that because bribery is hard to detect, the Court was going to give some leeway to legislatures to craft their contribution limits. Let me ask you this, if I can. I think I can make this clear enough. If the Republican or the Democratic Party in San Diego wishes to engage in, quote, GOTV, get-out-the-vote activity and so on, is that independent expenditure or is that coordinated? I believe they're targeting at their own voters. No. I'm not necessarily. Yes, I believe that would be independent. Yes. But no, you answered your question rather than mine. I'm sorry, but I didn't understand. Because you said if they're targeting their own voters. What about party-building activities which are designed to increase the membership in the Republican Party or get-out-the-vote activities whereby you have Republican or Democratic phone banks calling people, come down to the polls and vote? They don't say, come down to vote for Joe, but they know who they're likely to vote for, so they say, come down to the polls and vote. Yes. Is that coordinated or not coordinated? There's nothing in the San Diego Echo, the San Diego statutes that provide that. But I should point out that the reason we have these rules on unlimited coordinated activity as to party members is because the state law preempts it. There may be some FPPC rulings, the State Fair Political Practice Commission, that may speak to that, but I am not aware of that right now. So you can't answer me whether get-out-the-vote activity such as I've just described is allowed or not allowed? I would assume that they are not allowed, but it could be that there is a ruling that they are allowed. And if they are, I would be happy to submit a supplemental letter. I have seven minutes left, so just in two minutes, leaving five minutes for a bottle, I just want to talk about the 12-month contribution window. The district court got it right here as well. The provision does not ban contributions. It only directs those contributions away from a time when they're more likely to be used to curry favor with office holders and less likely to be the product of expressive activity meant to further election plans. And this way, the city's law is just like the city law left unchallenged by the plaintiffs, which says that candidates can't accept contributions 180 days after the election. These very late contributions, too, are primarily given to office holders to curry favor, not to support candidates. Under McComish, plaintiffs would need to demonstrate some chill caused by the 12-month limitation and not a, quote, mere metaphysical threat. They haven't done so. Two sentences in the verified complaint should not be enough to get a preliminary injunction from the district court, particularly an injunction which alters the status quo. As this Court in McComish explained, laws that place, quote, only a minimal burden on the First Amendment get only intermediate scrutiny. If the plaintiffs can establish a trial that the 12-month limit burdens them and prevents them from engaging in effective advocacy, at that point they'd be entitled to a preliminary injunction if the district court determined that these burdens outweigh the city's interest in preventing corruption through this window. And I will reserve the remainder of my time for rebuttal unless there are any questions. Thank you. Thank you. Mr. Bob? Thank you. May it please the Court. The standard of review here is, of course, de novo, where the trial court, on the question of whether the trial court identified the correct legal rule to be applied. There is no heightened standard here because it's a prohibitory injunction. That is, we are seeking to retain the status quo that existed previous to the acts complained of, and the acts complained of is the adoption of these laws that restrict the First Amendment activity of the plaintiffs. Now, we have a very curious situation where we have the government that bears the burden of proof on whether or not any of these restrictions on the activities of the plaintiffs  They bear the burden. They must come forward when there's a novel restriction with facts that support the claim. And they have said to this court that they are not going to do that. And, in fact, that they don't have to do that because they claim that we haven't met our burden, that the First Amendment is implicated. And they say we need more than what we have presented. Of course, the more, they've never told this court what that would be. And the best example I would have of that is, and, of course, there are many, many cases where the court says that if the party's intended activities is implicated by the challenge statute, well, then they have a First Amendment violation. But the city wants more, and an example would be like flag burning. In other words, just like when we say we have a donor that wants to give more than $500 to an independent expenditure committee, they're prohibited from doing that. Therefore, that's a First Amendment violation. They say that's not enough of a burden. Well, if you want to burn a flag, do you want to burn five flags, 20 flags to have enough of a burden here? No. One flag. I'm trying to figure out where this is going as a practical matter. You're saying that the city of San Diego needs to come forward with evidence in support of its rationales. Yes. Unless it's established, and there are examples of where it's established under the court decisions. So what about, for example, the limitation that says no contributions outside that 12-month period? What kind of evidence do you say they need? What we're talking about is not only corruption, but appearance of corruption. Well, that's what they claim. Do you want to go around and just have a survey of people who think it's corrupt or not corrupt? I mean, what do you want? We want something more than mere conjecture, that it actually gives rise to actual or the justified appearance of corruption to give a contribution over 12 months before. This is a novel. This is novel. In other words, just, you know, Shrink-Pak said if it's novel, you've got to come forward with evidence that demonstrates that this isn't just speculation, that the people think that this is corrupt activity or that there is actual corruption that exists in this 12-month period before the crime. How much deference do we owe to the decision by the adopters of the ordinance? I'm particularly reminded of Justice Breyer's opinion in the Vermont case where he says, you know, we really don't know this stuff, and the real experts are the politicians. The politicians in San Diego decide that there is a potential for corruption and appearance of corruption for contributions outside that 12-month period, and I have to say, I can understand the common sense of that. Early money is a particular kind of money. It greatly advantages certain candidates. We all know that in various circumstances, the person who's earliest on board to support a candidate is particularly rewarded in a variety of ways. I mean, what do they need to show beyond the fact that they themselves in their exercise of their political judgment say that that's so, and it's not at all implausible? That it gives rise to a particular danger of quid pro quo corruption. Now, why do you say particular danger and not just danger? Well, because they are only prohibiting those. They're only prohibiting them during that period. But they could have prohibited others. It's not that this is unique. Well, they couldn't prohibit them at all times, right? I mean, they can't prohibit people contributing to candidates 24-7, 365 for the rest of time. So now they've picked out a particular period of time in the face of already having contribution limits during that period of time, which is what has been used to prevent corruption by contributions. It's prohibiting large contributions by contribution limits, so it's $500 during that period of time. And that that time gives rise to a particular, peculiar danger of corruption. They have to prove it. There has to be something more than just conjecture. Well, at this stage, and it seems that most of the Supreme Court opinions, as well as the Long Beach opinion, they rely on the logic of what comes from large campaign donations or infringements of speech. You're arguing that you have infringement on your First Amendment rights because there's a total ban outside the 12th. If there is, if the restriction is novel, then logic isn't enough. And relying on existing law is not enough. You have to come forward with proof, because we're having the First Amendment rights of people being prohibited. What sort of proof are you looking for at this stage of the proceeding? I mean, this is a preliminary objection. Well, they presented none. But as to, I was just discussing with Judge Fletcher what I was, regarding the 12-month ban period, before the 12 months, that evidence like polling, testimony of experts, testimony of people that are active in the political system, that say there are examples of corruption. I know, but the argument seems so compelling that it seems as though getting any number of people involved in politics to testify would be a very simple thing to do. I mean, you're not really asking for much. They were provided the opportunity. Is Discovery still open? Well, it would be, because. Well, it's just a preliminary objection. Well, and that goes to Judge Wardlaw's question, then. It would be very easy to get some evidence that early supporters tend to have some greater influence or connection. If they had it, why didn't they present it? Well, I'm, you know, maybe, I don't know. I don't know what their budget is for this case. But I'm just saying, that's a very logical conclusion. Well, I don't agree with the logical conclusion. Based on. We're going to base it on logic. Incumbents raise war chests early in order to discourage other candidates from running against them. So that is a reason to raise money ahead of time, if you will. Sure. More than 12 months ahead. Sure. It discourages people from running. It has nothing to do with quid pro quo corruption. It has everything to do with trying to discourage other candidates. So any candidate that believes. I'm sorry. I have to interrupt on it. You know what I'm about to say. It has very much to do with discouraging other candidates. But that doesn't mean it does not also present some threat of corruption. Every. Well, actually, the answer is no to that. Come on. You're just fighting common sense. Merely to say that it has one purpose, which I agree with you. It has that purpose or can have that purpose. It doesn't exclude the possibility of corruption or the appearance of corruption. Well, and I agree with that point, Your Honor. For a moment, you did not. But now you do. Okay. But here we have a $500 contribution limit. Contribution limits are enacted in order to prevent corruption. In other words, what we're talking about is giving non-corrupting contributions during that period of time. That the city of San Diego has already established and has affirmed below that this is necessary. This limit is necessary to prevent corruption. Well, it's done. Well, let me ask you. It doesn't matter what time. Maybe this isn't in the record. Maybe it is. And you can tell me where it is. When do candidates for office in San Diego, when are they required to file their candidacy papers? I don't know. Because is it, I mean, I'm just wondering what relationship that bears to the 12 months. Well, not necessarily. Often the declaration of candidacy, there's actually in vast majority of states two different declarations. One is that which leads to you being placed on the ballot. That's one declaration. The other declaration is that you make to the campaign finance people that you've opened the campaign. Those are different. And what here we're talking about is not placing yourself on the ballot. We're talking about a campaign finance restriction that says you cannot raise non-corrupting contributions during a certain period of time. And they've presented no evidence to it. Now, as to the independent expenditure pact idea, I really think this is governed by the Long Beach Area Chamber of Commerce case. Each and every claimed interest of corruption interest or interest of the state was either dealt with in Long Beach or was dealt with by Citizens United. They are still saying that, well, candidates could be corrupted by independent expenditures, giving no proof, again, no proof of that, because they could have gratitude toward people who do independent expenditures. Well, in Citizens United, the Supreme Court on page 910 said, quote, ingradation is not corruption, end of quote. In other words, that you might feel gratitude toward somebody that says something nice to you or attacks your opponent is not, quid pro quo, corruption. Secondly, Mr. Bob, this is not your fault at all. We're just dealing with what the Supreme Court gives us. This is such fantasy land. Everything, independent expenditures, gratitude is not corruption, influence is not corruption, corruption is corruption. They never define corruption. We've got these artificial distinctions that run through this whole area of law. And this is not blaming you. It's blaming the whole area of law as being incoherent. So that's my outburst. Keep going. You're going to talk. It is very problematic because it's also shifting. And I assume you have a number of other suits ongoing, right, challenging various types of, I mean, every city. The cities didn't all coordinate in California, for example, and enact the exact same sort of law. So it seems as though we're going to have any number of cases having to address these in the wake of this piecemeal decision. So it may be. And so. Well, the second interest they claim is circumvention of contribution limits. That is, if you're going to give money to a candidate, then you could go give money to this PAC. It could give money to the candidate. But, of course, this PAC is an independent expenditure PAC that gives no money to candidates. So that interest of circumvention is not applicable. And the final is the corporate corruption interest. I mean, there's still we're right back in Citizens United, you know, hearing them say that corporations ought to be banned because their participation is corrupt. And the U.S. Supreme Court just threw that out in Austin. I'm not speaking for my colleagues, but with respect to the contributions to a committee making independent expenditures, as far as I'm concerned, Citizens United and Long Beach decides that you're pushing on an open door for me. I'm sorry. I didn't hear you well enough to understand. Oh, you're pushing on an open door for that one for me. I don't speak for my colleagues, but I'm with you. Yeah, I mean, I don't. On that point. Yeah, I think the logic certainly is if someone can do independent expenditures and you also have the right of association, you can associate on doing independent expenditures. And that goes to the third point, which is the corporate ban on making contributions to independent expenditure PACs. How is it that a corporation can be banned from doing what the court has said they have a constitutional right to do, and all they want to do is do it in association with other people? We have a right to association. It's very powerful. And which takes me to the political party ban. Doesn't Long Beach cover that one, too, though? I'm sorry. Doesn't Long Beach cover that one? Yes, it does. That's exactly what the chamber was doing. Well, the political party ban was enjoined. By the way, and there was a subsequent letter to the court I probably ought to address about whether or not this appeal is now moved because the city has adopted a $1,000 contribution limit on political parties, which we have now sued on behalf of the party. I don't think it is. My understanding of their position is that if they win, they're going to reenact the ban. So as long as their position is we'll go back to the prior law if we're allowed to, then the challenge to that would not be moved, so that it would still be properly before this court. Now, if they would disclaim that they will go back to that, then maybe it is moved, but they've never done that. In fact, their position is they want to reenact it. On the political party ban, it is true that nobody has been so audacious as to ban political parties from contributing to candidates. So we don't have a case on point, but the logic of Randall must be that you cannot ban such contributions. Well, I'm not sure. You see, that's my trouble with Randall because it's a typical, careful, balancing, multi-factor, nuanced opinion, which doesn't give us a clean rule for now. So this is different from Randall in a lot of ways. For example, the political parties can do all kinds of things in furtherance of their political aims. Some coordination, although it's kind of limited. Anything that's independently, and I'm trying to get a definition. I'm having a little trouble, no surprise. But that's really quite different from what was going on in Vermont. Yeah, but the government can't select out and say, well, it's okay for you to do certain First Amendment-protected political activities, but we don't think you should spend your money on these over here. Well, but I'm afraid this is precisely the analysis that Justice Breyer invites us to do, is to say, what's the overall impact upon the First Amendment interest of the corporation that wishes to influence the outcome of the election? And he looked at all these factors and said, you know, this is just too much of an inhibition on the corporation under the circumstances that we see in the Vermont statute. So now I've got to look at this one. Yeah. Well, the political parties are exercising a right of freedom of association. People are joining together, in this case to make contributions to candidates. Well, they're joining together. They're making contributions to the party. The order stands not to make contributions to the candidates. And they're pooling their resources. And one of the things political parties do with those resources is contribute to their candidates. Well, if they could, but maybe they can't. Well, but Randall took that and said that a political party must have a more robust contribution limit than individuals. They didn't go the opposite direction. Well, oh, this is an association, so you can ‑‑ it's okay to have the same as individuals. Or, no, this is an association, well, maybe you could do it less if they thought of this. But they said the political party has to have a greater contribution limit than an individual. Well, that cannot support, that analysis cannot support a zero contribution limit for a political party. How could it? They're entitled to a bigger one, and which is why they're going to be, we're going to be litigating that issue. But next was, is a corporate ban on contributions to candidates. And, you know, here I think Beaumont is readily distinguishable because the law allowed the corporation there to make contributions through their PACs, and there is no such mechanism available here. And the court pointed out in Beaumont how really important that particular provision was because it meant that there was not a suppression. It meant that the PAC exemption, quote, permits some participation of unions and corporations in the federal electoral process and leaves the government regulate campaign activity through registration and disclosure without jeopardizing the associational rights of advocacy organization members. So having the PAC outlet meant that the rights of the people involved in the association are not violated. Here it's an absolute ban. There is no other provision. I take it as implicit in the argument you're just making that you think Beaumont is still good law. I don't think, well. I mean, you're relying on Beaumont. Do you think it's still good law? No, I don't think it's good law. I don't think it survives the analysis of Citizens United. But for purposes of this, it's distinguishable. So now the next provision is the one-year ban, which I think we pretty well exhausted what I had to say about that. And the only other point I would make is the balance of hardships or the other factors in the Ninth Circuit. If you have a likelihood of prevailing on the merits, then the other factors for a preliminary injunction fall right in line, when you're in the First Amendment. So we would argue that the Court did not apply the proper standards in upholding several of these laws and that this Court reversed. Thank you. All right. Thank you. Counsel. Thank you, Your Honors. Just to be clear, the provision that bans corporate and other non-human entity contributions directly to candidates is in 27.2950. What's the rationale for banning candidate contributions by political parties? Well, I believe it would be the same anti-circumvention rationale. That is, there is no one political party. So if there were only one political party that could give a single, small donation, I think we wouldn't have a problem with circumvention. But, you know, people are very ingenious in how they try and get around campaign finance laws. And so you could channel I'm sorry, Your Honor. Don't contribution limits, doesn't that get at it just as well as banning it altogether? No, Your Honor. So suppose I want to give $10,000 to a candidate instead of $500. I give $500 to the candidate, and then I give $500 to as many branches of the political party as I can find to channel that money to the candidate. And that would effectively eviscerate the contribution limit. A few other points. I sympathize with what Your Honor said about incoherence. I've written four law review articles claiming the Supreme Court continues to be incoherent. I believe it's incoherent, but the job of the job of the lower court below the Supreme Court is to apply the precedents as they are. As they are, Beaumont remains good law. The Supreme Court in Citizens United said that they're not touching the contribution limit laws. The last thing we heard on contribution limits was Randall and Shrink, Missouri. In Shrink, Missouri, the Court said as to claims that there can be corruption, and this goes to Your Honor's point about what do you have to prove. If something is of government interest is neither novel nor implausible, the idea that large contributions can cause corruption or the appearance of corruption, you don't need a lot of proof. The quantum of proof is supposed to vary up and down based upon the novelty of what the government does. Let me ask you about the change that seems now to allow political parties to contribute up to $1,000. Yes. Is that for real? Yes. Could you address the mootness point that Mr. Bob just made? Yes. In response to the district court's ruling, the city council facing no limit on party contributions to candidates, the city council enacted a $1,000 contribution limitation. And does that make it moot? We do not believe it makes it moot, Your Honor, because the city council enacted it under duress. Under duress. Under duress. Okay. And it would go back to the ordinance it had, assuming that we would sustain that. I can't speak for the city council, but we believe that it's not moot because they should be free to make that choice. Okay. In terms of Beaumont and the PAC alternative, I don't believe that Beaumont relied upon the fact that a corporation gives to a PAC. But, of course, today a corporation can spend independently, so corporations have other outlets. Political parties as well have other outlets through independent expenditures, unlimited independent expenditures. And if this Court rules that contributions to independent expenditure committees are unconstitutional under Long Beach, then that route will be there as well. Yes. And so there will be many routes. I'm not hearing you argue very much against that outcome. Well, we believe that Long Beach is distinguishable in that this is a preliminary injunction where there are disputed facts, and in Long Beach the city stipulated to the facts and they conceded. But I'm not going to spend a lot of time on it unless Your Honor wants to hear more on that. But as to the issue of PACs in particular, you can do the equivalent of a PAC right now in San Diego. If there are ten of us in a corporation, we can each decide together to set up a general purpose committee, and we can each make contributions to that committee. And we can call it something, you know, related to the corporate name. There would be nothing to prevent that. It's just you could not use corporate resources to pay the administrative expenses or anything else for the corporate treasury if that entity is going to be making contributions directly to candidates. So I don't believe that, I believe Beaumont is good law. I don't believe that Beaumont turns on a PAC alternative, but even if it did, you can do the equivalent of a PAC alternative to get around this problem where each person would give up to $500. At the time that Beaumont was decided, as I understand, as I recollect, the law was then that the corporation could be limited for making direct expenditures. That's true, Your Honor, except that the corporation involved in Beaumont was a, what was called then an MCFL corporation, a non-profit corporation that didn't take corporate union money. Those corporations, the Supreme Court recognized in 1986, did have a right to make independent expenditures from their general treasury funds. I see. I see. Okay. I got it. And the other point I was going to make, which we haven't focused on, is that as to the 12-month limit, the district court found that the 12-month contribution window imposed only a minimal burden. And we believe that that's factual finding of the trial court that should be subject to some deference and that if we're up here on preliminary injunction, if the plaintiffs want to go back and opposing counsel said he doesn't know what they would have to prove, but as our contention has been overall drawn on Randall, that the idea would be to show that these contribution limits, this contribution window is preventing robust competition, preventing candidates from amassing resources. This comes, goes back to Buckley. Preventing candidates from amassing resources to engage in effective advocacy. If all that you have to prove is standing in order to meet your burden, then as Your You can have cases filed that just make the barest allegations, as this one does, one or two sentences of a burden, and then that fires up the machinery of the federal courts. It's our position that the plaintiffs need to first come forward with some proof that they are actually burdened by the law before the burden would shift to us to come forward with additional evidence on corruption. That's the standard that the Supreme Court in the Gonzalez case put forward as to preliminary injunctions, that the burden of proof follows the burden of proof. That is going to be a trial. And that puts the burden first on the plaintiff and then on the state to come up with this interest. We respectfully request that the court affirm as to the two, at least as to one of the two, of the rulings of the district court that were adverse to us. And on that, we'll submit and I'll turn it over. All right. Thank you, counsel. So the Heimer v. City of San Diego is submitted and the court will adjourn for today. I'll rise. This court for this session stands adjourned. Thank you.
judges: Timlin, Wardlaw, Fletcher W.